UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1: 16-CV-00119-HBB

**CHARLES C. CHILDRESS**            **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Charles C Childress ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 16) have filed a Fact and Law Summary.

Pursuant to General Order No. 2014-17, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. By Order entered October 3, 2016 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on May 24, 2013 (Tr. 218, 220). Plaintiff alleged that he became disabled on January 1, 2013, as a result of scoliosis, pinched nerves in the neck, numbness in his hand, migraines, bulging discs, and high blood pressure (Tr. 236). Administrative Law Judge Stanley K. Chen ("ALJ") conducted a video hearing on December 4, 2014, from Baltimore, Maryland (Tr. 54, 72-74). Plaintiff and his attorney Mary G. Burchett-Bower participated in the video hearing from Bowling Green, Kentucky (Id.). David Ascher Burnhill, a vocational expert, testified during the video hearing (Id.).

In a decision dated February 6, 2015, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 54-66). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014 (Tr. 56). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2013 the alleged onset date (Tr. 56). At the second step, the ALJ determined that Plaintiff has the following severe impairments: mild scoliosis, cervical and lumbar degenerative disc disease, tendinopathy of the right shoulder, obesity, post-traumatic stress disorder ("PTSD"), and depressive disorder, not otherwise specified (Tr. 56). The ALJ determined that Plaintiff's single seizure did not meet the duration requirement to be a severe impairment, and her migraines are a "non-severe" impairment (Tr. 57). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 57).

2

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work (Dr. 59). More specifically, the ALJ found as follows:

> [T]he claimant can lift up to 20 pounds occasionally and 10 pounds frequently, stand and walk up to 6 hours and sit up to 6 hours in an 8 hour workday with normal breaks. The claimant requires a sit/stand option, changing positions 5 minutes every half an hour. However, the claimant would be able to change positions at his workstation without being off task. He is limited to occasional climbing of ladders, ropes or scaffolds, frequently climbing of ramps and stairs, and can frequently balance, frequently stoop, frequently kneel, frequently crouch or frequently crawl. The claimant should avoid repetitive rotations, flexion or hyperextension of the neck. The claimant is limited to frequent overhead reaching with the right upper extremity. He is limited to frequent gross and fine manipulation in dealing with the right upper extremity. Finally, the claimant can perform simple, routine, repetitive tasks and is limited to occasional interaction with the public.

(Tr. 59). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work (Tr. 64).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 65-66). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 1, 2013 through the date of the decision, February 6, 2015 (Tr. 66).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 44-45). Additionally, Plaintiff submitted additional medical evidence in support of his request for

review (Tr. 6-39, 47-50). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered

4

the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

    4)    Does the claimant have the residual functional capacity to return to his or her past relevant work?

    5)    Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. The ALJ concluded Plaintiff retained sufficient residual functional capacity to perform a significant number of jobs that exist in the national economy.

A

1. Plaintiff's Argument

    Plaintiff disagrees with Finding No. 5 (DN 13 PageID # 687-91). First, Plaintiff argues that the ALJ failed to meet his duty to develop the record (Id. PageID # 687-90). Plaintiff asserts that the only medical opinion in the record addressing his physical limitations was rendered on December 31, 2013, by a non-examining state agency physician, Jack Reed, M.D. (Id. PageID # 688, 134-36, 149-51). Plaintiff points out that an MRI of his cervical spine, was performed on March 13, 2014 (Tr. 491); an MRI of his lumbar spine was performed on August 27, 2014 (Tr. 556); and an MRI of his right shoulder was performed on October 3, 2014 (Tr. 579) (Id. PageID # 688-89). Plaintiff points out that Dr. Reed did not have the opportunity to review this important medical evidence when he rendered his medical opinion regarding Plaintiff's physical limitations (Id.). Plaintiff explains that he brought this issue to the attention of the ALJ during the administrative hearing, and requested "that if a favorable decision could not be entered in the case based on the medical evidence of record that [Plaintiff] be sent for a [post-hearing] physical consultative evaluation" (Id.). Plaintiff contends that although the ALJ indicated he would give

the request some consideration (Tr. 106), the ALJ did not address the denial of Plaintiff's request in the decision or otherwise (Id.). Plaintiff argues the ALJ should have obtained a post-hearing consultative evaluation to obtain a medical opinion regarding Plaintiff's physical limitations in light of what the MRIs revealed about his cervical spine, lumbar spine, and right shoulder (Id. PageID # 689). Plaintiff asserts that the ALJ is not qualified to review the MRIs and assess Plaintiff's physical limitations (Id. citing Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. 2009)).

   2. Defendant's Argument

Defendant argues that Plaintiff has the burden of presenting evidence demonstrating that he is disabled (DN 16 PageID # 706-707 citing Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2011)). Defendant asserts that Plaintiff should have obtained a medical opinion regarding his functional limitations if he believed that these 3 MRIs indicated a substantial change in his physical condition (Id.). Defendant argues that the ALJ did not err by failing to order a consultative physical examination because there was sufficient evidence in the record for the ALJ to determine Plaintiff's physical abilities (Id.). Further, Defendant asserts that the ALJ's failure to provide a reason for not ordering a consultative evaluation does not constitute a reversible error (Id.). Defendant contends that deference is given to the ALJ's decision about how much evidence is adequate to develop the record, including whether additional medical evidence such as consultative examinations is required (Id. citing 20 C.F.R. §404.157(a); Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2011)). Additionally, Defendant denies that the ALJ played the role of a medical expert, as alleged by plaintiff (Id.). Instead, defendant asserts that the ALJ simply fulfilled his responsibility of weighing the evidence, including the diagnostic test results that

plaintiff cites, and assessing Plaintiff's residual functional capacity (Id. citing 20 C.F.R. §§ 404.1545, 404.1546(c); Poe v. Comm'r of Soc. Sec., 342 F. App' x 149, 157 (6th Cir. 2009)).

3. Discussion

A claimant bears the burden of proof as to the existence and severity of the limitations caused by his physical and/or mental impairments. Cruse v. Comm'r Soc. Sec., 502 F.3d 532, 545 (6th Cir. 2007). However, before making a disability determination, the Administrative Law Judge has the responsibility to develop the administrative record. 20 C.F.R. §§ 404.1512(d) and (e), 404.1545(a)(3), 416.912(d) and (e), 416.945 (a)(3). While the Administrative Law Judge has discretion whether to order a consultative examination, or to call a medical expert at the hearing, Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008) (citations omitted), the Administrative Law Judge's residual functional capacity finding must be supported by "substantial evidence" in the administrative record. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 2007).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. Critical to the residual functional capacity finding are medical source statements expressing medical opinions regarding functional limitations caused by the claimant's physical or mental impairments. 20 C.F.R. §§ 404.1513(c), 404.1527, 404.1529, 404.1545(a), 404.1546, 416.913(c), 416.927, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Medical source statements can be generated by treating physicians, consultative examining physicians, state agency physicians who reviewed the claimant's medical records, or medical experts who testify at hearings before an

Administrative Law Judge.   20 C.F.R. §§ 404.1502, 404.1513, 404.1545(a)(3), 416.902, 416.913, 416.945(a)(3).

In a limited number of instances, where the medical evidence shows comparatively little physical impairment, an Administrative Law Judge may be able to make a commonsense determination about a claimant's residual functional capacity.  See Bryant, 2017 WL 489746, at *4; Deskin, 605 F. Supp. 2d at 912-13.  However, the general rule is that Administrative Law Judges are simply not qualified to assess a claimant's residual functional capacity on the basis of bare medical findings that merely diagnose a medical condition.   See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functioning terms and no medical opinion supported the determination."); Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 292 (1st Cir.1986) (Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself."); Isaacs v. Comm'r of Soc. Sec., No. 1:08-cv-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms."); Deskin, 605 F. Supp. 2d at 912-13 (Generally, when the record contains only diagnostic evidence a medical opinion must be obtained before the Administrative Law Judge may make residual functional capacity findings.); Rohrberg v. Apfel, 26 F. Supp.2d 303, 311-12 (D. Mass. 1998) (the ALJ impermissibly relied on bare medical evidence to determine the claimant's residual functional capacity).  Thus, where an Administrative Law Judge proceeds to make a residual functional capacity assessment without the benefit of a medical source statement, or, with a

9

medical source statement made without the benefit of a review of a substantial part of the claimant's medical records, there exists cause for concern that substantial evidence may not support the residual functional capacity findings. *See* Bryant v. Comm'r of Soc. Sec., No. 3:15-CV-354, 2017 WL 489746, at *4 (S.D. Ohio Feb. 7, 2017); Deskin, 605 F. Supp. 2d at 911-12.

Here, Jack Reed reviewed the administrative record on December 31, 2013, and rendered a medical opinion regarding Plaintiff's physical limitations (Tr. 135-36, 150-51). This is the only medical source statement in the record. However, on March 13, 2014, Plaintiff underwent an MRI of his cervical spine (Tr. 491). The MRI revealed degenerative disc and facet changes at multiple levels, worse at C6-7 and C7-T1 (Id.). More specifically, at C6-7 the MRI revealed concentric disc bulge with superimposed central to right foraminal broad-based protrusion with moderate to severe canal stenosis, severe right and mild left neuroforaminal narrowing (Id.). At C7-T1 the MRI revealed concentric disc bulge with superimposed left subarticular to foraminal protrusion with mild left neuroforaminal encroachment with mild canal stenosis but no cord impingement (Id.).

On August 19, 2014, Plaintiff underwent an EMG study of all four extremities (Tr. 546-56). The results were normal (Tr. 556).

On August 27, 2014, Plaintiff underwent an MRI of his lumbar spine (Tr. 598). The MRI revealed disc protrusion at the central and slightly left paracentral area compressing the anterior aspect of the thecal sac at L4-5; disc protrusion at the left neural foremen at L3-4 displacing the left and L3 nerve root; Schmorl's nodules and degenerative changes in the thoracolumbar area (Id.).

On October 3, 2014, plaintiff underwent an MRI of his right shoulder (Tr. 579). The MRI revealed tendinopathy and a small partial thickness tear of the supraspinatus tendon at the intersection of the greater tuberosity; there is no tendon retraction or must muscle atrophy; tendinopathy of the infraspinatus tendon; acromioclavicular joint hypertrophy with a small amount of fluid within the acromioclavicular joint (Id.).

The ALJ acknowledged that Plaintiff had undergone MRIs of his cervical spine, lumbar spine, and right shoulder (Tr. 61). The ALJ contrasted the results of the MRIs with other evidence in the record such as physical exams, x-rays, and a normal EMG (Id.). For example, the ALJ observed that the results of the cervical MRI were inconsistent with Dr. Nathoo's treatment notes and x-rays of the cervical spine (Id.). Additionally, the ALJ downplayed the MRI of the lumbar spine by pointing out that an x-ray of the lumbar spine revealed no instability with flexion and extension or acute skeletal abnormality (Tr. 61).

The ALJ discounted Dr. Reid's medical opinion because it was overly optimistic in light of the medical evidence (Tr. 63). Thus, the ALJ made a residual functional capacity determination without any medical source statement in the record addressing the raw medical data from the MRIs and EMG. Judge Posner of the Seventh Circuit has warned that Administrative Law Judges "must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) (citations omitted). Moreover, other courts have held that Administrative Law Judges should not have relied on their own interpretation of MRI results when formulating a claimant's residual functional capacity. See e.g., Bryant, 2017 WL 489746, at *4 (Administrative Law Judge impermissibly relied on his own interpretation of the MRI results when formulating the claimant's

11

residual functional capacity); Deskin, 605 F. Supp. 2d at 913 (the Administrative Law Judge should have obtained a medical opinion translating the raw medical data in the MRI findings into functional limitations). Therefore, the physical limitations set forth within ALJ's residual functional capacity which are clearly based on a lay person's intuition, as opposed to a medical opinion, are not supported by substantial evidence in the record. Accordingly, the case must be reversed and remanded to the Commissioner, under sentence four of 42 U.S.C. §405(g).

The undersigned is aware that Plaintiff has raised other claims with regard to the ALJ's residual functional capacity findings. In light of the above conclusion, the undersigned deems it unnecessary to address those other claims. Further, the ALJ will have the opportunity to remedy those issues when he conducts additional proceedings to remedy the above identified defect in the original proceedings.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:   Counsel